UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRENTON DAVON FYE,<br><br>Plaintiff,<br><br>v.<br><br>KILLINGSWORTH, et al.,<br><br>Defendants. | CAUSE NO. 3:25-cv-306-AZ |

OPINION AND ORDER

Trenton Davon Fye, a prisoner without a lawyer, is proceeding in this case on three substantive claims against four Defendants for three distinct violations of the Eighth Amendment. *See* ECF 7. First, he brings claims against Sergeant Killingsworth and Officer Flores (first names unknown) in their personal capacity for monetary damages for using excessive force against him on or about January 31, 2024. Second, he brings claims against Sergeant Killingsworth and Officer Flores in their personal capacity for monetary damages for denying him necessary medical care after this incident. Third, he brings claims against Lieutenant Crittendon (first name unknown) and Unit Team Manager Tracy Cornett in their personal capacities for monetary damages for turning a blind eye to Sergeant Killingsworth's threat to harm prior to January 31, 2024. *Id.* at 7.

As recounted in the Court's prior screening order, ECF 7, in January 2024, Fye was accused of stabbing a correctional officer at Miami Correctional Facility and was transferred to the Westville Control Unit ("WCU"). After his arrival, on January 12,

2024, he claims Sergeant Killingsworth threatened to "beat [his] ass" because Fye had assaulted a fellow officer. He claims he reported the threat to Lieutenant Crittendon (first name unknown) and Cornett, among others. *Id.* at 2. Lieutenant Crittendon allegedly promised him he would be safe but took no steps to protect him, and Cornett allegedly told him she didn't care what happened to him. *Id.*

Later, on January 31, 2024, when Sergeant Killingsworth was transporting a handcuffed Fye to another area of the prison, Sergeant Killingsworth began assaulting him. He claims the Sergeant Killingsworth punched him, choked him, and smashed his head into a wall, among other things, and Officer Flores assisted in this unprovoked beating. Fye claims he had a knot on his head, pain, and bruises after this incident, but the officers refused his request to be taken to the medical unit. *Id.*

The parties consented to magistrate judge jurisdiction. ECF 19. Defendants filed a motion for summary judgment, arguing that Fye did not exhaust his administrative remedies before filing this lawsuit. ECF 20. Fye filed a response, and Defendants filed a reply. ECF 28, 29. Fye then submitted a subsequent letter, ECF 31, effectively a sur-reply, which the Court will consider. *See* ECF 35. The summary judgment motion is now fully briefed.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material

fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing summary judgment motion may not rely merely on allegations or denials in its own pleading but rather must "marshal and present the court with the evidence [he] contends will prove his case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). In other words, exhaustion of administrative remedies is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation." *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005).

"Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "Failure to do what the [prison]

requires bars, and does not just postpone, suit under § 1983." *Id.* at 1024. This "mandatory language means a court may not excuse a failure to exhaust" even under "special circumstances." *Ross v. Blake*, 578 U.S. 632, 639 (2016). This may appear harsh, but federal courts "must honor Congress's choice" in how the statutes governing lawsuits challenging prison conditions are written. *Id.* at 640.

At the same time, "[p]rison officials may not take unfair advantage of the exhaustion requirement[.]" *Dole*, 438 F.3d at 809. A prisoner need only exhaust administrative remedies that are "actually available" to him. *Smallwood v. Williams,* 59 F.4th 306, 313 (7th Cir. 2023). For example, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002)). "[W]hether a remedy is available to exhaust is a fact-specific inquiry." *Smallwood*, 59 F.4th at 314.

The Seventh Circuit previously laid out the procedure that courts should follow when faced with contested questions of whether administrative remedies have been sufficiently exhausted:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to

> exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). More recently, and roughly six months before the motion to summary judgment was filed in this case, the Supreme Court held that where questions of exhaustion are “intertwined” with the underlying merits of the substantive case or claim being brought, then the question of exhaustion cannot be resolved by a judge through a *Pavey* hearing and instead must be tried before a jury. *Perttu v. Richards*, 605 U.S. 460, 467 (2025). In that regard, the Supreme Court overruled the holding of *Pavey* which allowed a judge to determine exhaustion in all instances. *Id.* The Seventh Circuit had previously recognized the tension between motions for summary judgment and resolving questions of failure to exhaust in these types of cases:

> The logic of *Pavey* is in some tension with a decision to combine the resolution of facts pertinent to exhaustion with the decision whether there are facts warranting a trial. *Pavey’s* central holding is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court. Summary judgment, in contrast, is designed to weed out cases that must to go to a trier of fact from those that present no such issues. Separation of the exhaustion inquiry from summary judgment will thus promote clear decisionmaking.

*Wagoner v. Lemmon*, 778 F.3d 586, 591–92 (7th Cir. 2015). In other words, summary judgment can only be granted when there are no disputed material issues of fact, but whether there are disputed material facts is separate a question that the Court must

separately decide, and resolution of that question can make summary judgment inappropriate. *See Perttu*, 605 U.S. 460, 469 (2025) ("PLRA exhaustion is an 'affirmative defense' subject to 'the usual practice under the Federal Rules.'") (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *see also Burns v. Polk*, -- F.4th --, 2026 WL 2409723, at *5 (7th Cir. Aug. 18, 2026) (reversing summary judgment on exhaustion issue because a "swearing contest requires an evidentiary hearing to resolve") (quoting *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014)).

With this legal foundation established, the Court will move on to address the substantive issues presented by Defendants' motion. First, the Court will determine whether Defendants' affirmative defense of exhaustion is so intertwined with Fye's claims in this lawsuit that that issue of exhaustion must be submitted to a jury. *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute or resolving summary judgment, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims under *Perttu*). Second, if the issue does not need to be decided by a Jury, the Court will determine whether undisputed facts demonstrate that Fye failed to exhaust the administrative remedies made available to him prior to filing this lawsuit. If the undisputed facts do not establish that, then the Court will have to resolve these factual issues with a *Pavey* evidentiary hearing.

Here, there is no intertwining between Fye's substantive claims of excessive force, failure to provide medical care, and failure to protect and the exhaustion issue. Whether Fye exhausted his administrative remedies is distinct, so the Court can decide

the issue with an evidentiary hearing. *Cf. Perttu*, 605 U.S. at 479 ("[T]he usual practice of the federal courts in cases of intertwinement is to send common issues to the jury.").

On the substance, Defendants argue they are entitled to summary judgment because Fye failed to exhaust his administrative remedies or the grievance process at WCU; specifically, he failed to submit any grievances naming Sgt. Killingsworth, Officer Flores, Lt. Crittendon, or Tracy Cornett relating to the alleged excessive force, failure to provide medical care, and failure to protect claims he brings in this lawsuit. *See* ECF 21 at 1. In support of this version of events, Defendants rely primarily on an affidavit from Grievance Specialist Shannon Smith (ECF 20-1). In her affidavit, Smith explains the Offender Grievance Process at WCU (and the Indiana Department of Corrections) generally and then her particular experiences with Fye. She states that "[a]ll grievances received by the facility's Grievance Specialist are logged, recorded in, and uploaded to the IDOC's DELTA computer system." ECF 20-1 at ¶ 30. "This includes grievances that are ultimately rejected, as well as grievances that are accepted and to which a response is issued." *Id.* ¶ 31. Smith further states that between January 11, 2024 (when Fye arrived at the facility) and February 28, 2024, Fye "filed thirty-six separate grievances" but that only "[s]ix of these were formally processed"—which appears to contradict Smith's statement that all submitted grievances are logged. *Id.* ¶ 36. She says the remaining 30 grievances were addressed with Fye via "letters to the Warden" and during a meeting with Fye on February 28, 2024. *Id.* Smith further states that she had received no grievances from Fye relating to the individual Defendants or events at issue in this litigation. *Id.* ¶ 40.

The day after Fye and Smith met to discuss his grievances, Smith sent the Warden a letter to "place Mr. Fye on grievance abuser status." *Id.* ¶ 37. On March 4, 2024, Smith then sent Fye a letter "notifying him of his 30-day status as a grievance abuser" which had the effect of barring him from filing any additional grievances until April 3, 2024. *Id.* ¶ 38. Furthermore, Defendants have attached a "History of Grievances for Offender" for Fye which indicates that in January 2024, Fye submitted six grievances which were responded to. ECF 20-3. Again, while the substance or contents of 30 grievances which were *not* logged is not described, Smith swears that whatever their contents, they did not relate to the incidents at issue in this lawsuit. ECF 20-1 ¶¶ 40-41.

Fye tells a different story in his response to Defendants' Statement of Material Facts.[1] He states that he submitted two grievances relating to the threats and excessive force on State Form 45471 on January 13, 2024, and January 31, 2024. ECF 28 ¶¶ 4-5, 7-8. He further states he wrote letters to the Warden about the incidents on February 15 (which although would not comply with the formal grievance procedure, the Court will construe as context in determining whether there is a disputed issue of fact to resolve). *Id.* ¶ 9. Fye says he never received any formal response to these grievances or letters. He further states that when he met with Smith on February 28, he asked that all of his grievances be responded to, "however, after our meeting, I was blocked [from the

[1] While Mr. Fye's handwritten responses are not formal declarations or affidavits made under penalty of perjury, they are personally signed by him, based on his personal knowledge, and a fair preview of what he would presumably testify to at any hearing. In the interests of justice, the Court will overlook the failure of Mr. Fye to reduce his statements to a formal declaration and treat them as if made under penalty of perjury. However, Mr. Fye will be placed under oath, and subject to penalties of perjury, when he testifies at any future hearing in this case.

grievance process] for thirty days and I ultimately only received a response to approximately six grievances" which were unrelated to his present claims. ECF 28 ¶ 11.

Furthermore, Fye attached to his complaint what he says were two unprocessed grievances to his complaint which on their face relate to the claims and Defendants in this lawsuit which he says he submitted but received no response. *See* ECF 1-1. Defendants question why Fye would have a copy of these grievances, but Fye states that he has a copy in his personal possession because he makes a copy for himself of all grievances before he puts them in the prison mail system. ECF 31 ¶ 1.

As discussed, Defendants dispute that these specific grievances were ever received. That may be the case, but because Fye is the nonmoving party, the Court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party," *Bellaver v. Quanex Corp.* 200 F. 3d 485, 491-92 (7th Cir. 2000). This thus creates a classic "swearing contest" or "he said, she said" situation that is not possible to resolve at summary judgment. *Russell v. Bd. of Trs. of Univ. of Illinois at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001) ("summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute"). Apparent inconsistencies such as informal handling of 30 of Fye's 36 grievances further underscore the need for factual clarification. And because a prisoner is only required to exhaust the administrative remedies actually available to him and such remedies become unavailable when a facility does not respond to a properly filed grievance, *see Dole*, 438 F.3d at 809, Defendants are not entitled to summary judgment.

For these reasons, the Court **DENIES** Defendants' motion for summary judgment (ECF 20) for failure to exhaust because the factual issues relating to exhaustion are fairly disputed and cannot be resolved on paper. The Court will set this matter for a *Pavey* evidentiary hearing where it will receive evidence from Fye and Defendants relating to exhaustion issues only through documentary evidence and live testimony. The Court can decide this issue through an evidentiary hearing (effectively a bench trial) because the issue of exhaustion is not intertwined with the underlying facts of Fye's claims against Defendants for excessive force, refusal to provide medical care, and refusal to protect him from violence. The date for this hearing will be coordinated with the facility at which Fye is incarcerated at and will be set by separate order.

SO ORDERED on 29th day of September 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT